Okay, let's call the case the Government of the Virgin Islands v. Jimmy Davis. Mr. Schweitzer, now it's your turn. Yes, sir. I betrayed my enthusiasm to be before your honors. Good morning. My name is Brad Schweitzer. I'm from the Federal Defender Office in Philadelphia, here representing Mr. Jimmy Davis on appeal. At this time, I'd like to request three minutes for a call. That request will be granted. How is it that you end up down here? I'm not quite sure, your honor. We were... I know you don't have enough cases in Philadelphia. Not at all. We were appointed as replacement counsel in this case. Thank you. As the court is obviously aware, there are three issues here on appeal. One with respect to the Doyle error below, the instructional error regarding transfer of intent, and also the jury strike. With respect to the first two issues, the appellate division held Doyle error to have occurred and assumed that the instructional error occurred as well. Those two conclusions were absolutely correct. And what we're faced with here essentially is a review of the appellate division's harmless error rulings, at least with respect to the first two issues. And I would like to suggest to the court that, first of all, it's clear that this court exercises de novo review over the harmlessness determination. However, what we have here with respect to both of those first two issues is a rather clear error on the appellate division's part with respect to its harmless error analysis, not just its ultimate conclusion, whether there was prejudice or not. Here with respect to the Doyle error, the court zeroed in on one factor, which was its assessment of the evidence in the case to determine whether any prejudice adhered to the Doyle error. And in doing so, as we set forth in our briefs, really misunderstood or mischaracterized what the defense at trial was in this case, namely that it was not one of misidentification. It was one of false accusation. And having… Yes, Your Honor. Well, when you say it wasn't one of misidentification, isn't it fair to say that… I suppose one might say that Mr. Davis was saying that everybody in the car was lying about him because they didn't like him, although that would be at odds with his testimony, I think, which was that he didn't have a problem with these people. But isn't it fair to say that what the trial court was saying is they thought Davis fired the gun and his position was they were just wrong about that, mistaken, because it was really goofy that was firing the gun. That's not a misidentification defense? No. When you look at – it's a misidentification in the sense of I was not the shooter, but it's not a misidentification in the sense in which the appellate court viewed it, which was, oh, they looked at the shooter and they thought it was me, but it was really someone else because they misperceived me or they wrongly attributed – pointed to me at trial as the person that they saw. But what in fact was argued at trial was the issue of – was the issue of the history of the relationship between the accusers, the victims here, and the defendant, the bias that adhered with respect to them. I mean, it was patently clear this was elicited from the defense attorney and then argued credibility – who then argued credibility to the jury. And in fact, the prosecutor in this case at trial was perfectly clear that this was – this boiled down to a credibility case. In the rebuttal summation and also in the initial closing argument, the prosecutor again and again focused on credibility, not just of Mr. Davis but also of the witnesses in the case. So this was in essence a case where you had two sets of – two versions of the event. No physical evidence – there was physical evidence, of course. Holes in the truck. But the physical evidence doesn't point to one story or the other. That's absolutely clear. There's no doubt there was a shooting that was never contested. The issue is who's the shooter. So the physical evidence favors neither side in this case. And the cumulative biased testimony is what we have on the government's side and we have the testimony of Mr. Davis, of course, on his side. Now, again, there were other problems with the government's case here. First of all, there were contradictions amongst the government's witnesses with respect to several details concerning the day of the incident. Mr. Petras testified that – or excuse me, Mr. Francis testified that he and Mr. Petras had an altercation with Mr. Davis earlier in the day at a local store. Mr. Petras then gets on the stand and says he was never there. He was never at the store. He was never at this altercation. Not only that, there were some inconsistencies in Mr. Petras' testimony. Are you suggesting that in a credibility case there can never be a legal determination that the evidence was overwhelming because it depends on, by definition, believing one side over another? Not never, but certainly not here. Because what we have to do – again, this goes to the error in the analysis of the appellate division on harmless error. You have to look at all of the circumstances, all of the factors. How many times – how many questions are at issue? Here we have five questions, two remarks and summation. The prosecutor certainly thought this was incredibly important evidence, namely Mr. Davis' silence. He urged it to the jury. He asked the jury to put themselves in Mr. Davis' shoes. And I'm not asking about that, so I apologize if I didn't make my question clear. I assume for the sake of this discussion that one were to agree that the questions and the argument by the prosecutor were problematic. Take those out and ask the butt floor question. Was the evidence of guilt absent those things such that one would be able to say it was overwhelming and there clearly would have been a conviction anyway? I think I heard you say – I want to make sure I have it right – that you couldn't say that about the other evidence in this case. That's correct, Your Honor. You couldn't. Now, Your Honor's question – I think Your Honor's question was, so when it comes down to credibility, you can never find harmless error. And we don't need to go that far. Here, the fact that it is a credibility – it is wholly a credibility case and the fact of all the other aggravating circumstances with respect to – Yeah, what? – the prominence of the comments on the silence as well as the fact that there was no instruction. And, in fact, as we point out in our brief, the court's general prior inconsistent statement instruction exacerbated the error here. All of those factors together with the fact that this is a credibility case and when you look at the evidence here, then there certainly can't be a harmless error finding here. And the issue is not one of sufficiency absent the error. That's patently clear. We're under the Chapman standard here, and we're – not only is it the government's burden to prove – Harmless beyond a reasonable doubt. They need it beyond a reasonable doubt and that there's no reasonable possibility that this could have affected the verdict. And I would suggest that that's a simply impossible finding to make here when it was so critical to the prosecution that they let off their cross-examination of Mr. Davis with it. And when they so – I think we understand your position, and we're about to run out of time. Could you move to transferred intent? Absolutely. With respect to transferred intent, there's also an error – an important error in the appellate division's harmless error analysis. And that's, again, that the court essentially said, okay, well, let's – we'll assume error here, which it was correct to do. And yet it upheld the convictions – the three convictions for first degree assault because there was supposedly sufficient evidence of direct intent. And that's what the government, by my reckoning, argues on appeal. So I believe they've distanced themselves from the transferred intent instruction here today. But what – again, what the error is there in the appellate division's analysis is the standard is not otherwise sufficient. Again, we're under Chapman here. What happened was that the trial court took intent with respect to the three other people at the scene, aside from Mr. Francis, out of the case. Took it completely out of the case. Relieved the government of its burden to show intent by virtue of giving the transferred intent instruction. That's a due process violation. That's a violation that's Chapman. Do you concede that as to Francis, the evidence was sufficient here? Yes. So the – and with respect to the other three people at the scene, it was not sufficient. But, again, that's not the standard. The standard under Chapman is not sufficiency otherwise, absent the error. And, in fact, I think the only way that the government has attempted to argue or to bolster the otherwise sufficient rationale is by pointing to the so-called concurrent intent or kill zone theory of finding intent. That was never even instructed on below. That was never in the case. What the issue here was was either direct intent in the traditional sense or transferred intent. And what we, in fact, know by, again, the government's urging of the jury to convict on transferred intent, that that was, in fact, the theory that the jury relied on. Mr. Schweitzer, what are you asking for here in the way of relief? A new trial or are you asking that the charges be dismissed? We are asking for a new trial with respect to the transferred intent issue or in total? Both issues. Both issues. We're entitled to a new trial on all counts because of the Doyle violation. With respect to the transferred intent issue, if the court were to bypass or not go in our favor on the Doyle issue, we would be entitled to a dismissal of or a vacation of the convictions on the first degree assault and then also a resentencing on count two, which was the assault count against Mr. Francis. The trial court here sentenced to the maximum 15 years with the vacator of those convictions. It's not at all clear what the sentence would be. So the remedy would be vacator of the three convictions and resentencing in light of the new judgment. Thank you. We'll be back on the phone. Good morning. Matthew feeling on behalf of the people. I'd like to begin the argument today. Before we reach the issue of Doyle, I'd like to present to the court the issue of raffle and present to the court the question of have we even reached to a level of I see your honor. I see you're shaking your head already. I'm surprised that you're arguing to us in 1926 Supreme Court case when you've got ready at hand a whole lot more recent authority that speaks directly to the issues that we got to deal with. And, you know, I can suppose why that might be, but I don't want to foreclose you from saying what you want to say. Well, it sounds like you've already made your decision. I but what I want to say is I'm here to hear you. Okay. When a defendant takes a stand, just like any other witness, they are open to question. And what raffle is talking about and what footnote six and Doyle is talking about Doyle says we're not going that far in regard to say second trimester, third trimester of the whole criminal process. We're talking about the preliminary stages in regard to your immunity. It's along that line. But this footnote six says we don't reach that. And so raffle that is saying that you waive your immunity as far as a Fifth Amendment for incrimination. And so it then comes into a matter of impeachment. And that's what I'm presenting to the court today. Why don't you talk to us about the Haseen case? Haseen versus Zimmerman case. That's a Third Circuit case that talks about whether the character of Doyle violations in their effect. Is there anything in that case? Our own 1998 case that supports your view that this is limited to statements made right around the time of post arrest. Haseen does not specifically say. Wasn't that a case where somebody was in jail for months and months and months and there were comments made at the trial about you said nothing over the course of many, many, many, many months. Doesn't that just kind of sink your argument about it's all post arrest, immediate post arrest? No, because I well, yes or no, because I then fall heavily upon that specific case in regard to the court's analysis or Doyle violation and harmless error analysis. Because based on the analysis, as you see in Judge Holler's concurring opinion, she goes through the fact pattern in that case, lines it up with the facts that we have here. And she says that case was even more egregious than anything that we have here. So therefore, there is no violation of the individual's rights. Different standards, though, right? If you if you're talking about whether the standard in Haseen for whether there's error or not is the same as it is here, that's that was decided under Bechter, not under the standard, the harmless beyond reasonable doubt standard that Chapman imposes on us in a direct appeal. Correct. But then it seems that the court says that we're using that habeas corpus civil standard. However, we are. However, although we don't reach it, we will apply this. And then it looks like that they go into that analysis at the same time. And so when you look at the case that we have today, the facts of the case that we have today, it's a matter of harmless error going up this way when you have overwhelming evidence as opposed to how much is ever hurting to the defendant. And in this particular case, when you have the matter of what one person says is credibility, I say or cumulative, which is what the defendant says, oh, this is all cumulative. I would say, well, the flip side is that it's uncorroborated. Where is the testimony from his driver? Where's the testimony from his passenger? Where is Luffy? Go back a second, if you would, to your raffle line. I'm having trouble understanding how you were drawing the distinction here that this is a Fifth Amendment claim versus a due process claim. And why, under the facts of this case, that Doyle should not apply and we shouldn't have to get for the harmless error analysis. Because Doyle has never said that it's a Fifth Amendment question. It's always been a due process question. And so therefore, at that point, it's a matter of due process. So the better public policy position that the court could take is if you see Judge Stevens' dissent in Doyle and he talks about, for instance, the people's concern for perjury. So when an individual takes a stand, they're open for impeachment. And just as what happened in this particular case, then the defense counsel comes back and rebuts everything that the prosecutor has said. He rehabilitates the defendant. So the harm is, in this case, very minimal. Yeah, but that goes to the error analysis as opposed to the question of whether there was an error. Because it's very difficult because you see how they weave together the issue of perjury and the concern that a trial is going to be a fact-finding determination. In this case, he gets on the stand. He testifies. He takes his stand. And he gives his story. Goofy did it. And the prosecutor is probably looking goofy. Who's goofy? We never heard about goofy before. You never said anything about goofy after you were arrested. Isn't that what happened? Isn't that what happened here? Exactly. Okay. All right. Now. He asked the question that we can never delve into the mind of the jury. But that's the question that when they went into the jury room, they were asked. Where's goofy? Who's goofy? Why is he playing against now? Who's goofy? It's been six months. But you're saying that that's a Fifth Amendment issue. I'm saying that Doyle never. And that he waived it by taking the stand to testify. Exactly. Because raffle is talking about. And in effect, aren't you saying it's really a credibility issue? Exactly. Your Honor. It's a credibility issue in which defense counsel had the opportunity. His clients already understand. He had the opportunity to rehabilitate him on redirect. By saying, you know, why didn't you say something about goofy before? Exactly. And he could have given his reason as to why he didn't say anything about goofy before. He was afraid of goofy. Whatever it was he talked about. What I would say, a defendant takes a stand. And he's already had evidence suppressed. Fourth Amendment issue. He then takes a stand. And he makes mention of, oh boy, just like that time when you caught me with a pound of pot in the trunk of my car. Whoops. At that point, he's opened up the door. We can then discuss that. The defendant takes a stand. He talks about. He's open to talk about a prior conviction. There's certain things that the government can do to any witness. Not just the defendant. We have to consider the defendant has any witness. Let me, really, let me ask you. If I've got this right. You're saying that by taking the stand, the defendant waived any Fifth Amendment objection he would have to being cross-examined about his silence. That's what Raffle says, but it then limits it. Isn't that exactly contrary to what Doyle says? Doesn't Doyle say in the context of a defendant taking the stand and being cross-examined that it's a violation of the right to remain silent to go after the defendant on the silence itself? I understand you 100%. What I'm saying in response to that is Doyle drops that footnote. That footnote six is where I stand. That there's a distinction that the court makes, which is then flushed out in the dissent of Justice Stevens. That talks about we're not dealing with later in time. We're talking about that initial proceeding or proceedings, that initial part of the criminal process. What the concern is, is that is an individual using their constitutional rights almost as a shield to get up there. Let me ask this question as a follow-up to Judge Jordan's. Since 1976 when Doyle was decided, is there any case that's interpreted Raffle to survive under circumstances such as this case? No, sir. Is there any case that says you're wrong in this assertion? There are cases that dance around it, but they have not overturned Raffle. Raffle is still good law. Do you have a case that says that? I have no cases that say Raffle is specifically overturned. So Raffle is out there and saying that when that defendant takes that stand, that he throws his... Juan, I'm not surprised by your answer to this question, because when I saw this case and read what the issues were, obviously in the realm of criminal cases, you don't have a whole lot of cases where defendants take the stand that we end up reviewing in the first place. I think this is an interesting issue for the court to consider and to really consider it. I understand your position. I'm not taking a position here, sir. I'm just asking questions. Very well. Let me ask this question. Maybe it really doesn't matter to your argument, but it seems that Mr. Davis, throughout, has raised this as a due process issue. It was decided before the appellate division as a due process issue, not a Fifth Amendment issue. What approach did you take before the appellate division? It was briefed in regard to Raffle. However, as Judge Holler said in her concurring opinion, I believe at the prior counsel, much to the chagrin of the government attorney, I think it was conceded or basically said, yes, we have a Doyle, a violation. So it was briefed. I don't have a record of the proceeding. I do know that defense counsel makes mention of it in his brief. All right. Why don't you proceed on any other points you want to discuss here, Mr. Fairman? In regard to the juror situation, I think just touching on that one briefly, that the court should give due deference to a trial judge. There's no manifest abuse of discretion in this particular case. I want to talk about transfer of intent. OK. In that regard, Your Honor, you have to remember that the jury was specifically instructed on each particular person for specific intent. But how would we know? How are we to know what the jury did? If there's a correct instruction and an erroneous instruction, assume that for purposes of my question, and the jury goes back and comes back with a verdict, how are we or anybody else supposed to know whether they applied the law correctly or applied the incorrect law they were given? I'd respond by saying that you don't look at any one single jury instruction in a vacuum. You look at everything as a whole. Agreed. You look at it all as a whole, and one part of it is right and one part of it is dead wrong, and it's bearing on the same issues. How is a court or a defendant supposed to know whether they were rightly or wrongly convicted? Well, we never know, of course, what goes on in the jury room, but, again, you have to look at the harmless error analysis of what was the evidence in the case and how it was presented. That's how I got into the kill zone type cases that were discussed. Ideally, if I had been the trial attorney, I would not have discussed transferred intent because it's not a completed crime. That's the problem. So, really, it's a specific intent crime, and they were instructed on specific intent. Yes, but the challenge part of the instruction relieved them of the burden of finding, or relieved the government of the burden of proving an essential element of the crime. Specific intent. And yet we have case law that says that the use of a gun in such a situation, that alone gives you specific intent. The whole issue of what we have, we have one individual in the bed of a truck passing a truck that stopped. He's shooting. It's very close. We don't know who he's shooting at. And that's actually one of the things that I would consider, is that everyone has always said that the conviction as to Francis is open and shut. But he pointed at every single person there, and he had no regard as to who he was going to kill or attempt to kill. Okay, Mr. Vail. Thank you very much. Mr. Schweitzer. I'm sure you're going to do it, but why don't you talk a little bit about this raffle argument. Yes, I will. And I didn't lead with that, Your Honor, because I didn't know what the government's position was going to be today. A couple things. First, I think it's important to know that even if you were to credit the government's argument, that reduces the Doyle violations to five from seven. The government's position is absolutely clear in the record. Five of the comments, the two in summation, and three of the questions related to the silence at the time of arrest, which is indisputably a Doyle violation. That isn't saved by raffle, I think, even under the government's theory. So what we're really arguing about here is the supposed Doyle footnote six, which my colleague says he is standing on. And to answer the court's question, it's true that in Doyle, the court did not consider the issue of silence downstream from the immediate arrest context. That was reserved, in a sense, in footnote six. However, what is also true is that, as Your Honor pointed out, is in Haseen, this court found Doyle violations in that precise context. A seven-month period between the arrest and trial in Haseen, there were three questions about the defendant's silence during that period. It's not unclear. It's not ambiguous at all in Haseen. And this court said that those were Doyle violations. That's the first point. And then in Balter, this court expressly addressed the government's argument about whether a delay in the silence distinguishes Doyle. And in Balter, this court said, well, we don't need to reach the issue, and this was pre-Haseen, but we are very doubtful, very skeptical. It doesn't make any sense that that would make a difference for Doyle. So this court has really spoken on the issue, and that's it. I would also point out to the court that two other circuits have definitively held that silence later on, outside the immediate context, is a Doyle violation. And I can provide the court with sites to those if the court wishes. But that would be Lorry in the Fifth Circuit, 985 F. Second 1293, and Hawkins in the Second Circuit, 758 F.2d 866. So, again, no authority for holding that later silence is not a Doyle violation. All the authority is in our favor on that point. Now, Rafel was the law before Doyle. Doyle came along and said, okay, things have changed now because of Miranda. We have now mandated that the government tell someone that they have the right to remain silent and that that silence cannot be used against them. Once that mandate occurred in Miranda, the due process analysis kicks in and carves out an exception to Rafel. There's just no other way to look at it. And with respect to harmlessness, if I may, I would just point the court to, obviously, it is a very factual analysis. It always is in these cases. But if this court looks to the constellation of its other Doyle cases, and Judge Fisher, you're right, these don't come up that often. I think this record is a bit of an anachronism, frankly. But when you look at Comiskey, when you look at Curtis, two cases from this court in the 1980s, both held prejudicial Doyle error, reversed convictions. Comiskey is quite strongly on point in our favor factually. There you had two competing stories. It was actually a shootout involving a car chase. And Judge Slobiter suggested that, well, the defendant's story isn't all that plausible, but that's a jury question. We can't hold it harmless for that reason. And finally, my last point, Your Honors, if I may, is there was a suggestion that this is just a where's a goofy comment, where's goofy, that that's all this was, this Doyle violation. That's not what it was at all. The where's goofy argument was made in summation separately. The prosecutor made as much of that as he could. This was something else. This was the defendant's supposedly prior inconsistent statement of core Doyle violation. But just one last question on this point. It's really just a credibility question. Put Doyle aside. I know you don't want to. We can't totally put Doyle aside. But your argument is basically a credibility question. They didn't. He's testifying that Goofy did it. We want you to believe, Davis, that Goofy did it, not Davis. And isn't it isn't credibility always an issue with every single witness? Where do you preclude the prosecutor from talking about that testimony in light of Doyle? It absolutely is a credibility issue. And Doyle recognizes that. This is what this the use of silence is. The theory for it is it's a prior inconsistent statement on behalf of the defendant. And that that is typically used to challenge credibility. There's no question about that. The issue is in the limited context of post-Miranda silence, is that fair game under due process? Is that a fair way to challenge the defendant's credibility? And it's not for two reasons. First of all, recognized and hailed in Doyle itself. First of all, it's not very probative after a government agent has told you that you can remain silent and that your silence can't be used against you. That's not all that probative anymore. In other words, it's not that inconsistent. It may be attributable, the silence that is, may be attributable to following the warnings. To later on, after the immediate arrest, to counsel's advice. I don't know of many defense lawyers who would merge their client into the prosecutor's office to share their defense strategy unless it was some sort of DNA evidence that's unimpeachable or something like that. So it's not probative. Also, just on the fairness point, and this is what Doyle focused on, although it also reiterated the probativeness issue, it's simply not fair to, on the one hand, give those Miranda warnings and on the other hand to use the silence. So in answer to your Honor's question, it is a credibility issue. We're not denying that. But Doyle simply says that's not a fair way to attack the defendant's credibility. Pre-Miranda silence? Sure, go ahead. Pre-arrest silence? Go ahead. The Supreme Court has said that after Doyle. No issue with respect to that. There's one area that is untouchable. That is post-Miranda silence. Whether it happens at the time of the arrest or later on before trial. And that was the violation. Thank you. Thank you, Mr. Schultz. We thank both counsel for an excellent argument. We'll take a matter under discussion.